J-S76031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  T.S.L.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  T.S., MOTHER | No. 1156 EDA 2017 |

Appeal from the Decree March 21, 2017
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0001006-2016
CP-51-DP-0001713-2015

| | |
|---|---|
| IN THE INTEREST OF:  T.K.A.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  T.S., MOTHER | No. 1157 EDA 2017 |

Appeal from the Decree March 21, 2017
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0001005-2016
CP-51-DP-0001714-2015

BEFORE:  PANELLA, J., STABILE, J., and PLATT, J.*

---

* Retired Senior Judge assigned to the Superior Court.

MEMORANDUM BY PLATT, J.:                    **FILED JANUARY 25, 2018**

In these consolidated cases,[1] T.S. (Mother), appeals from the decrees that granted the petition to involuntarily terminate her parental rights to her children, T.S.L.M., and T.K.A.M. (Children) (born 10/10 and 2/04, respectively), that was filed by Philadelphia's Department of Human Services (DHS) on October 25, 2016.  We affirm.[2]

The parties are familiar with the facts of this case.  We refer the reader to the trial court's July 6, 2017 opinion, in which the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  (**See** Trial Court Opinion, 7/06/17, at 1-6).

Mother raises the following questions on appeal:[3]

> 1. Did the [trial court] err in summarily denying [Mother's] Motion for Recusal, without due consideration, prior to proceeding to a Goal Change and Termination of Parental Rights Hearing?
>
> 2. Did the [trial court] err in finding that [DHS] had met its burden in proving grounds under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5) and (8), by "clear and convincing evidence"?
>
> 3. Did the [trial court] err in finding that DHS had met its burden to prove that termination would be in the [Children's] best interests, under § 2511(b)?

---

[1] This Court consolidated these cases *sua sponte*, on May 8, 2017.

[2] The trial court also terminated the parental rights of the Children's father, E.N. (Father).  Father did not appeal that termination.

[3] Mother filed her notice of appeal and statement of errors complained of on appeal on April 4, 2017.  **See** Pa.R.A.P. 1925(a)(2)(i).  The trial court filed an opinion on July 6, 2017.  **See** Pa.R.A.P. 1925(a)(2)(ii).

4. Did the [trial court] err in denying Due Process and Equal Protection of Law to [Mother] as guaranteed by the Constitutions of the United States and of the Commonwealth of Pennsylvania?

(Mother's Brief, at 4) (some spacing provided).

Our standard of review of a trial court's order involuntarily terminating parental rights is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude that there is no merit to the issues Mother has raised on appeal. The trial court opinion properly disposes of the questions presented. (**See** Trial Ct. Op., at 8-16) (finding: (1) motion for recusal properly denied where trial court determined it could hear and decide case fairly and without prejudice; (2) DHS produced clear and convincing evidence that over six months before filing of termination petition, Mother failed to perform parental duties, and Children had been in foster care for eighteen months at time of trial; (3) DHS produced clear and convincing evidence that it has made reasonable efforts to reunify Mother with Children and conditions that led to placement of Children continue to exist; (4) DHS produced clear and convincing evidence that termination of

Mother's parental rights would be in best interest of Children's physical, intellectual, moral, and emotional well-being; (5) DHS produced clear and convincing evidence that no bond exists between Mother and Children; (6) DHS produced clear and convincing evidence that adoption would be in Children's best interest; and (7) Mother's due process rights were not violated). Accordingly, we affirm on the basis of the trial court's opinion.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/18

576031-17

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION

| | | |
|---|---|---|
| In the Interest of T. K. A. M., a Minor | : | CP-51-DP-0001714-2015 |
| | : | CP-51-AP-0001005-2016 |
| | : | |
| In the Interest of T. S. L. M., a Minor | : | CP-51-DP-0001713-2015 |
| | : | CP-51-AP-0001006-2016 |
| | : | |
| | : | FID: 51-FN-001456-2015 |
| | : | |
| APPEAL of: T.S., Mother | : | 1156/1157 EDA 2017 |

OPINION[1]

Fernandes, J.:

Appellant T.S. ("Mother") appeals from the order entered on March 21, 2017, granting the petition filed by the Philadelphia Department of Human Services ("DHS"), to involuntarily terminate Mother's parental rights to T. K. A. M. ("Child 1") and T. S. L. M. ("Child 2") (collectively "Children") pursuant to the Adoption Act, 23 Pa. C. S. A. §2511(a)(1), (2), (5), (8), and (b). Mother's attorney, Neil Krum, Esquire, filed a timely Notice of Appeal with a Statement of Matter Complained of on Appeal pursuant to Rule 1925(b).

Factual and Procedural Background:

The family in this case became known to DHS on January 22, 2013, when DHS received a General Protective Services ("GPS") report alleging that Mother was residing with the Children in a home with no heat, no running water, no beds, and with broken pipes in the basement. The report also alleged that Mother abused drugs. DHS investigated and determined that the home was not appropriate. Mother complied with DHS and entered a long-term shelter with the Children. The GPS report was determined to be valid. In January 2015, the Community Umbrella Agency ("CUA") NorthEast Treatment Center ("NET") began supervising the family and providing services. Mother had a history of cancelling appointments for CUA to perform safety assessments of the home. Mother failed to schedule

---

[1] The Notes of Testimony were ordered on March 22, 2017, and further requested on April 27, 2017, and May 15, 2017. Notes were received on May 17, 2017.

appointments for the Children to be evaluated by Elwyn and failed to provide CUA with confirmation of her employment. CUA often observed that the Children's hair and clothing were dirty. For the 2014-2015 school year, Child 1 had over sixty unexcused absences from school. On May 4, 2015, at a truancy hearing for Child 1, Mother informed the court that Child 1 would be attending cyber school. On May 18, 2015, Mother withdrew Child 1 from her elementary school. On May 22, 2015, CUA requested a consent form to obtain Child 1's attendance record for cyber school. Mother refused to speak to CUA and told the case manager to speak to her lawyer before abruptly ending the call. On June 23, 2015, DHS and CUA filed an urgent dependency petition for the Children. On July 10, 2015, an adjudicatory hearing was continued. On August 28, 2015, CUA attempted to access a second bedroom in the home which Mother vehemently objected to, claiming the Children did not sleep in the room, so CUA did not need to see it. Child 2 attempted to open the bedroom door, at which point Mother became very aggressive towards the child, screaming and grabbing her by the arm and snatching her out of the room. On August 31, 2015, at an adjudicatory hearing, the Children were adjudicated dependent and CUA was ordered to obtain an Order for Protective Custody ("OPC") and with police assistance place the Children in foster care. On September 1, 2015, DHS received a GPS report alleging that Child 2 is diagnosed with asthma and has an inhaler; that both of the Children have cognitive delays; that the Children were not immunized because of Mother's religious beliefs; and that Mother may suffer from mental illness. That same day, DHS obtained an OPC for the Children. At the September 3, 2015, shelter care hearing, the OPC was lifted and the Children were fully committed to DHS custody. The court referred Mother to Behavioral Health Services ("BHS") for an evaluation. The Children's foster parent reported that the Children did not know how to take care of their hygiene. At a September 2015 permanency review hearing, the court ordered Child 1 to be referred to Behavioral Health for a biopsychosexual evaluation, and to be referred for a Philadelphia Children's Alliance ("PCA") interview due to reports of sexual abuse. The court found Mother to be non-compliant with her objectives and Mother had failed to attend BHS for her court-ordered evaluation. The court ordered Mother to be referred to the Clinical Evaluation Unit ("CEU") for a forthwith drug screen with dual diagnosis assessment and to the Achieving Reunification Center ("ARC") for parenting. Mother was also ordered to sign consents for the Children, and was granted weekly supervised visits by the agency,

line of sight and hearing. On October 10, 2015, Child 2 was admitted to St. Christopher's Hospital for a severe asthma attack. It was reported that Child 2 had not been given her daily medication of Flovent because Mother had not sent it to the foster home nor notified CUA of its importance. On October 14, 2015, CUA contacted Mother for consent to a breathing tube for Child 2; Mother gave verbal consent because she was at work and could not give written consent. CUA was able to get written consent for the Children's father ("Father"). Child 1 had significant symptoms of post-traumatic stress disorder ("PTSD") and although she was in sixth grade on a modified curriculum, she was still at a kindergarten level. Child 1 also could not shower on her own and tried to shower with her clothes on. Child 1 also exhibits worse symptoms as well as unusual behaviors after contact with Mother. Mother refused to sign consents for the Children to engage in therapy. Child 1 has a history of multiple hospitalizations for asthma and reports being locked in a basement and receiving severe beatings from Mother. At a December 2015 permanency review hearing, the court found Mother to be minimally compliant with her objectives. Mother refused to attend her BHS evaluation and the CEU. At a March 2016 permanency review, the Children were found to be doing very well in the foster home and in school. Child 1 was refusing visits with Mother. Mother was reported to have been angry and uncooperative and had harassed the CUA case manager by calling the case manager's family. During the hearing, Mother claimed that DHS illegally kidnapped her children and the sheriff had to be called into the courtroom to calm Mother down. Mother threatened the CUA case manager multiple times as well as the DHS practice specialist. Whenever Mother would speak with CUA and DHS, she would record the conversation. Due to the threats, an emergency hearing was held on July 26, 2016, during which the court ordered Mother to comply with all of her objectives and to stay away from the DHS specialist. During the hearing, Mother was found to be recording the hearing. Mother had two cellular phones and was ordered to delete any and all recordings of the hearing by the trial court and the sheriff's officer. The court also issued a gag-order for Mother not to discuss the case with anyone.[2] In addition, the trial court ordered Mother not to place pictures or information about DHS or CUA online and circumvent the trial court's

---

[2] Mother appealed the trial court order on August 23, 2016, acting *pro se*. *See In the Interests of T.M. and T.M.*, 2665/2669 EDA 2016.

order by using aliases. On July 27, 2016, Mother posted on Facebook that she would not abide by the court's gag-order in addition to details about the prior day's hearing. Mother uses the alias of "Bonnie Clyde" to post on Facebook. Mother would encourage people to bombard the DHS specialist with emails demanding that the Children be returned to her. The DHS specialist received many emails threatening her and her family's safety. On July 28, 2016, DHS filed a Motion for Contempt of Court Order based on Mother's violation of the gag-order. A Rule to Show Cause was issued and a motion for contempt hearing was scheduled. The hearing was continued twice because Mother would not show. Since Mother would not show up, the trial court issued a judge-only bench warrant for Mother. DHS filed petitions for termination of Mother's parental rights on October 25, 2016. The petitions for goal change and termination were heard on March 21, 2017, at which time the Children were thirteen and six years of age and had been in care for eighteen months.

Prior to taking testimony, the trial court heard argument on Mother's Motion in Limine which requested a continuation due to Mother's pending appeal of a permanency hearing; an emergency application for order of protective custody; and court recusal. The trial court denied Mother's requests. (N.T. 3/21/17, pgs. 8-17).

The former CUA case manager, who received the case in January 2015 at the beginning of the case, testified that she filed an urgent petition for the Children because Mother refused to allow her to assess the home. (N.T. 3/21/17, pgs. 28, 32, 47). The former CUA case manager testified that Mother was non-compliant with SCP objectives. (N.T. 3/21/17, pg. 47). Mother was aware of her SCP objectives. (N.T. 3/21/17, pgs. 42-43). Mother's Single Case Plan ("SCP") objectives at the time the CUA case manager had the case were to attend a forthwith CEU drug screen; to attend parenting classes at ARC; to submit to a mental health evaluation; to attend family therapy; and to consistently attend supervised visits with the Children. Mother was referred to ARC for parenting. Mother attended a twelve-week parenting program at NET, but missed three of those weeks. Mother was referred to the CEU for drug and alcohol treatment, but Mother did not engage in any drug and alcohol treatment. Mother claimed she had a right to smoke marijuana. Mother refused to engage in any mental health treatment at any point during the case. Mother was also referred to ARC for anger management and a parenting capacity evaluation. Mother did not complete anger

management and refused to avail herself for the parenting capacity evaluation. (N.T. 3/21/17, pgs. 40-42). Mother was offered weekly supervised visits. Interactions between Child 1 and Mother were not nurturing. At one visit, Child 1 requested to spend the night out with the foster family which Mother refused and Child 1 got aggressive and threw a chair. After the first four or five visits with Mother, Child 1 began to consistently refuse to visit with Mother. Child 1 has expressed that she does not want to see her Mother. Interactions between Child 2 and Mother were also not nurturing. At most visits, Mother would bring legal books and talk to Child 2 about her rights. Mother also discussed the case with Child 2, even though CUA directed her not to. Mother would also laugh at Child 2's speech impediment. Neither of the Children would become upset at the end of visits when leaving Mother nor have either of them asked for additional time with Mother. (N.T. 3/21/17, pgs. 43-46, 48-51, 54).

The CUA outcome specialist, who has worked with this family since November 2016, testified that Mother refused to sign releases for CUA to access the Children's medical records and consents to medication for the Children. Mother's visits with Child 1 were at Child 1's discretion; Child 1 always said she did not want to visit with Mother. Child 1 has not had a visit with Mother since the specialist came onto the case. Mother does not accept that Child 1 refuses to visit with her and informed CUA that she wants to hear Child 1 say she does not want visits. Since the specialist came onto the case, Mother has missed nine visits with Child 2; she only made seven visits. During visits, Mother will either talk to Child 2 about her frustration with certain things in the case or sit silently. Child 2 is not upset when visits end and has never asked for additional time with Mother. (N.T. 3/21/17, pgs. 56-65).

The current CUA case manager testified that Mother has been minimally compliant with her SCP objectives. Mother refused to enroll in mental health treatment. Mother is not engaged in drug and alcohol treatment. Mother refuses to participate in a parenting capacity evaluation. Mother also refused to attend anger management. Mother did complete partial parenting classes. Mother has not provided CUA with a copy of her lease. Mother's home has not been assessed for appropriateness. Mother is unemployed, but is attending school. Mother still has supervised visits and never progressed to unsupervised visits. Children are currently in separate foster homes; Child 1 is in a NET foster home and Child 2 is in a

Wordsworth foster home. Child 1 is in seventh grade and is in a life skills classroom. Child 1 was receiving therapy at West, but needs new consents for it to resume. Child 2 is in kindergarten and is not receiving any special services. Child 2 still needs consents from Mother to get up to date on her medical, but she has had hospital visits for her asthma. Mother refuses to sign the needed consents for the Children. (N.T. 3/21/17, pgs. 76-81).

Mother testified that she has not engaged in mental health treatment because she believes that psychological evaluations are not required of parents in dependency petitions. Mother also testified that she did not engage in drug and alcohol treatment or anger management because she believes those are not issues that caused the Children to enter care and are not part of the situation that needs to be remedied. Mother claims that the Children were taken from her because she did not ensure that the Children were medically up to date, but that the Children had had their physicals shortly before their removal. Mother testified that she brings food and something special for the Children at visits. Mother has not seen Child 1 since October 2016. Mother does not believe that Child 1 requires behavioral or mental health services or that Child 2 requires speech therapy. Mother also testified that the Children should not be immunized due to religious and personal reasons. Mother claimed that she was not aware of Child 2's severe asthma and claimed that she did not have to be hospitalized until after placement. Mother testified that she wants to speak to an asthma specialist before she will sign any consents to medication, but admitted that she has not made an appointment to see a specialist. Mother refuses to participate in a parenting capacity evaluation and anger management program, claiming it has nothing to do with the Children. (N.T. 3/21/17, pgs. 86-94). Following testimony, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8), and (b), and changed the permanency goal from reunification to adoption.

**Discussion:**

Mother avers that the Trial Court erred in the following respects:

1. Denying a Motion for Continuance
2. Denying an Emergency Petition for Custody
3. Denying a Motion for Recusal

4. Finding that DHS has met its burden, by clear and convincing evidence, to prove grounds for termination under 23 Pa.C.S.A. sec. 2511(a)(1), (a)(5), (a)(8), and (b).

5. Denying Due Process of Law to [Mother], as guaranteed by the Constitutions of the Commonwealth of Pennsylvania and of the United States of America.

6. [Mother] reserves the right to expand and to supplement this Concise Statement, and to raise additional issues in her Appellant's Brief, for the following reasons:

    a. Pursuant to Children's Fast Track Rules, this Concise Statement is being filed at the same time as is the Notice of Appeal and Order for Transcript,

    b. Therefore, this Concise Statement must be prepared and filed without benefit of a copy of the Transcript.

Mother has not submitted a supplement to her Concise Statement of Errors pursuant to issue 6, so Mother has waived those issues on appeal.

Mother's appealed issues 1 and 2 are without merit since the Children in this case are already in DHS custody. Mother did not file a petition for emergency custody. The trial court is sitting as a dependency court and the only way for Mother to regain custody of her Children is for her to successfully complete all of her single case plan objectives. Mother's prior appeal was of a review order with collateral issues irrelevant to the termination trial. A termination trial is performed in accordance with the Adoption Act. The trial court properly denied the emergency petition for custody request and motion for continuance. (N.T. 3/21/17, pgs. 10-12).

As to Mother's appealed issue 5, it is also meritless. Due process requires adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter. *In Re Adoption of J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005); *see also S. Med. Supply Co. v. Myers*, 804 A.2d 1252, 1259 (Pa. Super. 2002). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Mother had adequate notice of the termination trial as she was present at the bar of the court. Mother was represented by counsel. Mother had an opportunity to defend herself and be

heard at a meaningful time and in a meaningful manner when she testified as a witness. As a result, Mother was not denied due process of law at the termination trial by the trial court.

As to Mother's appealed issue 3, Mother alleges that the trial court committed error by denying her motion for recusal. Recusal is proper when there are questions about the impartiality of the judge in presiding over a case. "When a judge 'believes his impartiality can be reasonably questioned,' he should recuse himself, just as he should if he himself has doubt as to his ability to preside impartially." *In Interest of Morrow*, 583 A.2d 816, 819 (Pa. Super. 1990) citing *Commonwealth v. Goodman*, 311 A.2d 652, 654 (Pa. 1973). Where a judge rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal absent an abuse of discretion. *Arnold v. Arnold*, 847 A.2d 674, 680–681 (Pa. Super. 2004); *In re S.H.*, 879 A.2d 802, 808 (Pa. Super. 2005). This review is more deferential than the usual review for abuse of discretion, since "the judge himself is best qualified to gauge his ability to preside impartially." *In re Bridgeport Fire Litigation*, 5 A.3d 1250, 1254 (Pa. Super. 2010). Not only do trial judges observe the parties during the hearing, but usually, as in this case, they have presided over several other hearings with the same parties and have a longitudinal understanding of the case and best interests of the individual child involved. Thus, the appellate courts must defer to the trial judges who see and hear the parties and can determine credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 1983). The party, in this case Mother, who asserts that the trial judge should recuse bears the burden of setting forth specific evidence of bias, prejudice, or unfairness. *Commonwealth v. Harris*, 979 A.2d 387, 392 (Pa. Super. 2009). There is a presumption that judges are honorable, fair, and competent.

Mother's counsel moved for court recusal, via a motion in limine, during the March 21, 2017, termination trial. Mother's attorney argued that the trial court made findings at previous hearings that reflected negatively on Mother's credibility. However, those findings are specific to those hearings and do not impact Mother's credibility at later and future hearings. It is best practice in dependency cases to have one judge hear all aspects of the case. The trial court has heard several other hearings with the same parties and has the longitudinal understanding of the case and the best interests of the Children. There is no bias or prejudice

towards anyone. The trial court determined that it can hear and dispose of this case fairly and without prejudice. (N.T. 3/21/17, pgs. 14-17). As Mother's attorney did not provide any further specific evidence of bias, prejudice, or unfairness on the part of the trial court, Mother's motion for court recusal was properly denied.

Mother did not appeal 23 Pa.C.S.A. §2511(a)(2) or the change of permanency goal to adoption in her Concise Statement of Errors Complained of on Appeal, so she has waived those issues on appeal. *See Krebs v. United Refining Co.*, 893 A.2d 776, 797 (Pa. Super. 2006). *See also In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009); *In re C.P.*, 901 A.2d 516, 522; *In re J.E.D.*, 879 A.2d 288, 293, fn. 7 (Pa. Super. 2005). For this reason, this opinion will only address the issues appealed in Mother's issue 4 as to termination.

Mother has appealed the involuntary termination of her parental rights. The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C. S. A. §2511(a), which provides the following grounds for §2511(a)(1):

(a) **General rule** – The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntary terminate parental rights, the burden of proof is on the party seeking termination which must establish the existence of grounds for termination by clear and convincing evidence. *In re Adoption of Atencio*, 650 A.2d 1064 (Pa. 1994). To satisfy section (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear

conviction without hesitance of the truth of precise facts in issue. _In re C.R.S._, 696 A.2d 840, 843 (Pa. Super. 1997).

The petitions for involuntary termination of rights and goal change were filed on October 25, 2016. For the six month period prior to filing, Mother was not successfully completing all of her SCP objectives. Mother was referred to ARC for parenting, but completed partial parenting classes at NET. Mother missed three weeks of parenting classes; however, still received a certificate of completion. Mother was ordered to the CEU for drug and alcohol treatment and a dual diagnosis. Mother did not complete any drug and alcohol treatment or even an assessment; thereby, violating the court order. Mother claimed she had a right to smoke marijuana. Mother testified that she has not engaged in mental health treatment or drug and alcohol abuse treatment because she does not believe those issues need to be remedied in order to get the Children back into her care. Mother was referred to ARC for anger management. Mother refused to complete anger management and continues to harass and threaten the safety of the DHS specialist by either posting on Facebook or encouraging others to do so prompting the trial court to issue a gag-order that Mother appealed. Mother was also ordered to participate in a parenting capacity evaluation. Mother refused to participate in the evaluation, claiming it is not one of the issues that needed to be remedied when the Children were removed. Mother has not provided CUA with a copy of her lease verifying her residence. Mother's home has not been assessed for its appropriateness due to Mother refusing access to the whole house and to make herself available. Mother is currently unemployed, but claims she attends school. CUA works around Mother's schedule. Mother refused to sign consents for the Children throughout the case. Mother also refused to sign for Child 2's asthma medication without speaking to an asthma specialist first; however, she admitted that she has not scheduled an appointment with an asthma specialist. Mother had weekly supervised visits, line of sight and hearing. Mother never progressed to unsupervised visits. Mother would bring food for the Children at visits. Interactions between Mother and the Children were not nurturing. Child 1 started to consistently refuse to visit with Mother soon after placement. Mother does not accept that Child 1 does not want to visit with her and has requested to hear the child tell her she does not want visits. On one occasion, Mother actually called the police to the agency because she did not accept that Child

1 does not want to visit with her. At visits with Child 2, Mother would either talk to her about the case, against directions of CUA and DHS, or sit there silently. Mother would also laugh at Child 2's speech impediment. Since November 2016, Mother has only made seven visits with Child 2 and has missed nine of them. (N.T. 3/21/17, pgs. 28, 32, 42-51, 54, 56-65, 76-81, 86-94). Over the six months prior to the filing of the termination petitions, Mother failed to perform her parental duties by her constant failure to successfully complete all of her SCP objectives and refusal to consent to the Children's asthma medications. Mother's inability to perform those parental duties is not limited to the six month period, but extends throughout the life of the case. The Children have been in care for eighteen months and need permanency. Mother has an affirmative duty to place herself in a parenting position. Mother evidenced a settled purpose of relinquishing parental claims to the Children by failing and refusing to perform her parental duties, specifically all of her SCP objectives. Since these facts were demonstrated by clear and convincing evidence, the trial court did not err or abuse its discretion in terminating Mother's parental rights under this section.

Mother also appeals the trial court's termination of parental rights under 23 Pa. C. S. A. §2511(a)(5), which permits termination when a child was removed, by court or voluntary agreement, and placed with an agency if, for at least six months, the conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond a period of time deemed reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare require agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts have been made by the agency, which have been ineffective. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The Children in this case have been in DHS custody since September 2015, eighteen months at the time of the termination trial. The Children were placed in care because Mother was unable to parent. Mother's chief obstacle was her failure to successfully complete all of her SCP objectives. Mother was aware of her objectives. (N.T. 3/21/17, pgs. 28, 32, 42-43, 47). Mother was referred to ARC for parenting, but completed partial parenting classes at NET. However, Mother missed three weeks of the twelve week course. Mother was referred and ordered to the CEU for drug and alcohol treatment, but Mother did not complete any drug and alcohol treatment during the life of the case. According to Mother, it is her right to smoke marijuana. Mother testified that she has not engaged in mental health or drug and alcohol treatment because she does not believe those were issues that need to be remedied for the Children to be returned to her care. Mother was referred to ARC for anger management, but refused to complete anger management. Mother claimed that she does not have anger issues nor is anger management relevant to her caring for the Children. Mother's threats against the DHS specialist have escalated to the point that the trial court issued a gag-order against Mother, which Mother appealed. Mother also refused to participate in a parenting capacity evaluation because she does not believe her parenting skills are in question. Mother has not provided a copy of her lease to verify her residence. CUA has not assessed Mother's home. Mother is currently unemployed, but claims she is attending school. Mother refused to consent for the Children's services and medications throughout the life of the case. Mother also refused to consent to Child 2's asthma medication without speaking with an asthma specialist. Mother is aware of Child 2's hospitalizations for severe asthma and admitted that she has not scheduled an appointment with an asthma specialist. Mother has weekly supervised visits with Child 2, line of sight and hearing. Mother never progressed to unsupervised visits. Child 1 has consistently refused visits with Mother since the beginning of the case. Interactions between Mother and the Children were not nurturing. At visits, Mother brings food, but either speaks to Child 2 about concerns about the case, though directed by CUA not to, or sits there silently. Mother would also laugh at Child 2's speech impediment. Since November 2016, Mother only attended seven visits and missed nine visits. (N.T. 3/21/17, pgs. 42-51, 54, 56-65, 76-81, 86-94). The Children are in foster homes where all of their needs are being met. The trial court always found that DHS made reasonable efforts to reunify Mother with the Children. The trial court also found that

Mother was unable to remedy the conditions which led to the Children's placement within a reasonable amount of time as evidenced by Mother's failure to successfully complete all of her SCP objectives. The Children are in safe and permanent homes. Adoption is in the Children's best interests. (N.T. 3/21/17, pgs. 46-47, 65-66, 82). Mother was given ample time to place herself in a position to parent the Children. The Children cannot wait for Mother to decide when to be a parent. The conditions which led to the placement of the Children continue to exist, and Mother cannot and will not remedy them within a reasonable amount of time. As a result, the trial court found that termination of Mother's parental rights would be in the best interests of the Children's physical, intellectual, moral, and emotional well-being. The trial court made this determination on the basis of clear and convincing evidence, so termination under this section was also proper.

The trial court also terminated Mother's parental rights under 23 Pa. C. S. A. §2511(a)(8), which permits termination when:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

This section does not require the court to evaluate a parent's willingness or ability to remedy the conditions which initially caused placement or the availability or efficacy of DHS services offered to the parent, only the present state of the conditions. *In re: Adoption of K.J.*, 938 A.2d 1128, 1133 (Pa. Super. 2009). The party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love and comfort, security and stability. *In re Bowman*, A.2d 217 (Pa. Super. 1994). See also *In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003).

The Children have been in care for eighteen months. The Children are currently placed in foster homes where all of their needs are being met. Mother has not successfully completed her SCP objectives and has not placed herself in a position to parent the Children. Mother's

outstanding objectives were to attend a forthwith CEU drug screen; to attend parenting classes at ARC; to submit to a mental health evaluation; to attend family therapy; and to consistently attend supervised visits with the Children. Mother was aware of her objectives. (N.T. 3/21/17, pgs. 28, 32, 42-43, 47). Mother was referred to ARC for parenting, but completed partial parenting classes at NET. However, Mother missed three weeks out of the twelve-week program. Mother did not comply with the court order to report to the CEU for drug and alcohol treatment. Mother admitted to CUA that she has a right to smoke marijuana. Mother refused to be assessed for dual diagnosis. Mother testified that she has not engaged in mental health or drug and alcohol treatment because she does not believe those issues caused the Children to be brought into care. Mother was referred to ARC for anger management and a parenting capacity evaluation. Mother refused to complete anger management and participate in a parenting capacity evaluation because she does not believe she has anger issues or that her parenting skills are in question. Mother has not provided CUA with a copy of her lease to verify her current residence nor has the home been assessed by CUA. Mother is currently unemployed, but claims she is attending school. Mother refused to consent to the Children's medical services and medications throughout the case even though she is aware of Child 2's hospitalization for severe asthma. Mother refuses to sign for Child 2's asthma medication until she speaks to an asthma specialist, but admitted that she has not scheduled an appointment with any asthma specialist. Mother has weekly supervised visits, line of sight and hearing. Mother never progressed to unsupervised visits. Mother would bring food for the Children at visits. Child 1 has consistently refused visits with Mother since the beginning of the case. Mother does not accept that Child 1 does not want to see her and wants to hear the child tell her so. Mother has even called the police because Mother refuses to accept that Child 1 does not want to visit with her. At visits with Child 2, Mother would either talk to her about the case, against the direction of CUA, and her individual rights or sit their silently. Mother would also laugh at Child 2's speech impediment. Since November 2016, Mother attended seven visits and missed nine of them. (N.T. 3/21/17, pgs. 42-51, 54, 56-65, 76-81, 86-94). The Children are in safe, permanent, and pre-adoptive homes. The Children need permanency. Termination of Mother's parental rights and adoption would best serve the needs and welfare of the Children. (N.T. 3/21/17, pgs. 46-47, 65, 82). The testimony of the DHS witness was credible. Mother is not ready,

willing, or able as of today to parent the Children full-time. DHS met its burden under this section. The trial court did not err or abuse its discretion when it terminated Mother's parental rights under this section.

After a finding of any grounds for termination under section (a), the court must, under 23 Pa. C. S. A. §2511(b), also consider what – if any – bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case. *Id.* At 762-763. However under 23 Pa. C. S. A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical, if found to be beyond the control of the parent.

Mother has weekly supervised visits, line of sight and hearing. Mother never progressed to unsupervised visits with the Children. Interactions between Mother and the Children were not nurturing. Child 1 consistently refuses to see Mother since the beginning of the case. During visits, Mother would bring food for Child 2; and Mother would either speak to Child 2 about the dependency case, even though directed not to by CUA, and her individual rights or sit there silently. Mother brings law books to visits and discusses them with Child 2. Mother's conversations with Child 2 are inappropriate. Mother would also laugh at Child 2's speech impediment. Mother has missed nine visits since November 2016, only attending seven of them. Neither of the Children were ever sad or upset after visits nor did they ask for additional time with Mother at any point during the case. Child 1 has expressly stated that she does not like Mother and does not want to see her; Mother has not seen Child 1 since October 2016. (N.T. 3/21/17, pgs. 43-46, 48-51, 54, 59-65, 86-90). The Children are currently in separate foster homes where all of their needs are being met. Child 1 is in seventh grade, in a life skills classroom, and Child 2 is in kindergarten. Child 1 was attending

therapy at West, but requires Mother's consent to continue. Child 2 also requires consent from Mother to get up-to-date on medical. Mother refuses to sign the needed consent forms for the Children. Mother does not believe that Child 1 requires behavioral or mental health treatment or that Child 2 requires speech therapy. (N.T. 3/21/17, pgs. 35-36, 57-58, 64, 79-81, 92-94). The trial court heard testimony that neither of the Children would suffer irreparable harm if Mother's parental rights were terminated. The trial court also heard testimony that adoption is in the Children's best interests. Mother's relationship with the Children is attenuated. Mother does not have a healthy beneficial bond with the Children that needs to be preserved. (N.T. 3/21/17, pgs. 46-47, 65-66, 82). The DHS witnesses were credible. Consequently, the trial court did not err or abuse its discretion when it found, by clear and convincing evidence, that there was no parental bond and that termination of Mother's parental rights would not destroy an existing beneficial relationship.

**Conclusion:**

For the aforementioned reasons, the court properly found that DHS met its statutory burden by clear and convincing evidence regarding termination of Mother's parental rights pursuant to 23 Pa. C. S. A. §2511 (a)(1), (2), (5), (8) and (b) since it would best serve the Children's emotional needs and welfare. The court also properly found that changing the Children's permanency goal from reunification to adoption was in the Children's best interest. The trial court's termination of Mother's parental rights and change of goal to adoption were proper and should be affirmed.

By the court,

Joseph Fernandes, J.

| | | |
|---|---|---|
| In the Interest of T. K. A. M., a Minor | : | CP-51-DP-0001714-2015 |
| | : | CP-51-AP-0001005-2016 |
| | : | |
| In the Interest of T. S. L. M., a Minor | : | CP-51-DP-0001713-2015 |
| | : | CP-51-AP-0001006-2016 |
| | : | |
| | : | FID: 51-FN-001456-2015 |
| | : | |
| APPEAL of: T.S., Mother | : | 1156/1157 EDA 2017 |

## Proof of Service

I hereby certify that this court is serving today, July 6, 2017, the enclosed Opinion upon the following persons:

Kathleen Kim, Esq.
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
Attorney for DHS

Vincent Giusini, Esq.
1534 Packer Ave., Ste. 200
Philadelphia, PA 19145
Attorney for Appellee/Children, T.K.A.M.
and T.S.L.M.

Neil Krum, Esq.
1533 W. Stiles Street
Philadelphia, PA 19121
Attorney for Appellant/Mother, T.S.

Claire Leotta, Esq.
12325 Academy Rd., Ste. 52
Philadelphia, PA 19154
Attorney for Father

By: _Vijaya Singh_____

Vijaya P. Singh
Law Clerk to the Hon. Joseph Fernandes
Philadelphia Family Court
1501 Arch Street, Suite 1431
Philadelphia, PA 19102
Telephone: (215) 686-2660